# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 13 |
| STEPHEN A. D'ALESSIO, | ) | Case No. 17-30521-EDK |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| | ) | Adversary Proceeding |
| STEPHEN A. D'ALESSIO, | ) | No. 17-3026 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CIT BANK, N.A., | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OF DECISION

Before the Court is the "Defendant's Motion for Summary Judgment" (the "Summary Judgment Motion") filed by CIT Bank, N.A. ("CIT"), the defendant in this adversary proceeding and a party in interest in the underlying Chapter 13 bankruptcy case filed by Stephen A. D'Alessio (the "Debtor"). In his complaint, the Debtor seeks, *inter alia*, a declaratory judgment that CIT is not entitled to foreclose a reverse mortgage on real property owned by the Debtor's spouse at the time of the execution of the reverse mortgage, but currently owned by the Debtor. In order to resolve the Summary Judgment Motion, the Court must determine whether the Debtor is a "Borrower" with respect to the reverse mortgage.

1

I.      FACTS AND POSITIONS OF THE PARTIES

In 1988, the Debtor and his spouse ("Patricia") acquired title to property located at 164 East Street, Mount Washington, Massachusetts (the "Property") as joint tenants. In 1990, they conveyed title to Patricia only. 20 years later, the Property was mortgaged to secure a home equity conversion mortgage loan (a "reverse mortgage")[1] from CIT's predecessor, Financial Freedom Acquisition, LLC ("Financial Freedom"). In connection with the transaction, Patricia and the Debtor signed several documents. Most of the loan documents were signed solely by Patricia; however, both Patricia and the Debtor signed the actual mortgage (the "Mortgage").

Following Patricia's death in September 2015, CIT mailed to the Debtor a "Home Equity Conversion Mortgage Repayment Notice" informing him that, in light of Patricia's death, the loan was due and payable in full and, absent payment, the lender would initiate foreclosure proceedings. The loan was not repaid. On June 20, 2017, prior to any foreclosure sale of the Property, the Debtor filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code").[2]

On his schedules filed with the bankruptcy petition, the Debtor disclosed an ownership interest in the Property (which he had inherited upon Patricia's death). The Debtor also filed a

---

[1] As the Massachusetts Supreme Judicial Court explained, a home equity conversion mortgage loan:

> is a unique kind of loan available to homeowners age sixty-two or older. These mortgages are commonly referred to as "reverse mortgages" because, instead of making payments *to* the lender, the borrower receives cash *from* the lender, either as a line of credit, in monthly payouts, or as a lump sum. As in a traditional mortgage, a reverse mortgage is secured by the borrower's home. Unlike a traditional mortgage, however, the loan does not become due until the borrower dies or no longer lives in the home; interest and fees are added to the loan balance over time and the entire balance is typically paid from the sale of the home.

*James B. Nutter & Co. v. Estate of Murphy*, 88 N.E.3d 1133, 1136 (Mass. 2018) (citations omitted).

[2] *See* 11 U.S.C. § 101 *et seq.* All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

2

Chapter 13 plan (the "Plan"), through which he proposed to cure prepetition real estate tax arrears on the Property. In the main bankruptcy case, CIT objected to confirmation of the Debtor's Plan (the "Plan Objection") and moved for relief from the automatic stay imposed by § 362 of the Bankruptcy Code (the "Motion for Relief from Stay"). In the Plan Objection, CIT complains that the Plan does not provide for adequate treatment of its claim (i.e., a payoff of the entire outstanding loan amount). In the Motion for Relief from Stay, CIT maintains that it is entitled to proceed with its nonbankruptcy rights to collect the full, accelerated amount of its reverse mortgage loan (and to proceed with a foreclosure of the Property, if necessary).

The Debtor opposed both of CIT's pleadings and also commenced this adversary proceeding raising three related claims for relief. In Count I, the Debtor seeks a declaratory judgment declaring him a "Borrower" under the Mortgage, which would negate CIT's claimed right to collect the entire mortgage loan balance through foreclosure at this time. In Count II, the Debtor alleges a breach of contract. Lastly, in Count III, the Debtor alleges a violation of the Massachusetts consumer protection law ("Chapter 93A") on grounds that CIT has attempted to foreclose the Property without a right to do so. Each of the pending controversies – the adversary complaint, the Plan Objection, and the Motion for Relief from Stay – require the resolution of one issue: with respect to the reverse mortgage transaction, is the Debtor a "Borrower"?

Under the Debtor's reasoning, the Mortgage, as a contract of adhesion, must be strictly construed against CIT. The Debtor argues that his signature on the Mortgage, followed by the designation "Borrower," creates an ambiguity that must be construed in his favor – i.e., that he is indeed a "Borrower" with respect to the Mortgage. And because he is a surviving "Borrower" who currently resides in the Property, the Debtor contends, CIT has no right to foreclose under the loan documents. In further support of this argument, the Debtor relies on federal law that appears

3

to prohibit the Department of Housing and Urban Development ("HUD") from insuring reverse mortgage loans that would allow foreclosure while a "homeowner" continues to occupy the property following the death of a borrowing spouse.

CIT maintains that any ambiguity created by the Debtor's signature on the Mortgage can only be resolved by reference to all the loan documents. CIT argues that such a comprehensive analysis results in only one logical conclusion – that only Patricia, and not the Debtor, was a "Borrower" for purposes of the reverse mortgage transaction. Accordingly, CIT says, it is entitled to repayment of the loan in full, including by way of foreclosing on the Property, if necessary.

II. <u>DISCUSSION</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable to these proceedings by Fed. R. Bankr. P. 7056. The material facts relevant to the Summary Judgment Motion are not in dispute[3] and the matter is ready for resolution as a matter of law.

In the Debtor's strict construction of the Mortgage against CIT, the presence of his

---

[3] Although the Debtor appears to assert new factual allegations in his opposition to the Summary Judgment Motion (including that he was promised he could remain in the Property should Patricia predecease him and that he was not afforded an opportunity to review the loan documents before signing), those new claims, entirely absent from the adversary complaint and his objections to the pleadings in the main case, are raised too late. "Plaintiffs may not 'raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment,' *Calvi v. Knox Cty.,* 470 F.3d 422, 431 (1st Cir. 2006). Allowing a plaintiff to proceed on new, unpled theories after the close of discovery would prejudice defendants, who would have focused their discovery efforts on theories actually pled." *Miranda–Rivera v. Toledo–Davila,* 813 F.3d 64, 76 (1st Cir. 2016). Counsel to the Debtor acknowledged at the hearing on the Summary Judgment Motion that each of his claims, including the relief sought under Chapter 93A, was predicated on his argument that he was a "Borrower" under the reverse mortgage.

4

signature next to the word "Borrower" in the signature block of the Mortgage means that the Debtor is a "Borrower" under the loan documents. The Court agrees with the Debtor that the reverse mortgage is properly characterized as an adhesion contract. *See James B. Nutter & Co. v. Estate of Murphy*, 88 N.E.3d 1133, 1139 (Mass. 2018) (reverse mortgage contracts are "standardized contracts of adhesion"). However, under Massachusetts law,[4] "the rule construing ambiguities against the drafter does not require [the court] to adopt the interpretation claimed by the [nondrafting party]." *Id.* at 1141. Instead, the court must deduce "the meaning an *objectively reasonable person* in the nondrafting party's position would give to the language in the contract." *Id.* at 1139 (emphasis supplied). And that interpretation must "be, under all [the] circumstances, a reasonable and practical one." *Id.* at 1141 (quoting *Shea v. Bay State Gas Co.*, 418 N.E.2d 597, 602 (Mass. 1981)).

The Debtor also urges the Court to ignore the other documents executed in connection with the transaction in determining whether the Debtor is a "Borrower" under the Mortgage. However, "Massachusetts precedent indicates that when an element of ambiguity exists in a document that is part of an integrated transaction involving multiple documents, the group of writings may be considered together in order to ascertain the meaning of one of the individual writings." *Zanditon v. Feinstein*, 849 F.2d 692, 700 (1st Cir. 1988); *see also F.D.I.C. v. Singh*, 977 F.2d 18, 21 (1st Cir. 1992) (citing *Chelsea Indus., Inc. v. Florence*, 260 N.E.2d 732, 735 (Mass. 1970)) (where "several writings evidence a single contract or comprise constituent parts of a single transaction, they will be read together"); *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012) (under

---

[4] The Mortgage (as well as the associated promissory note) states that it is to be interpreted under federal law and the law of the jurisdiction where property is located – here, Massachusetts. Both parties have presented their arguments with reference to Massachusetts law, and, discerning no reason for applying the law of another jurisdiction, this Court does the same. *See McCarthy v. Azure*, 22 F.3d 351, 356 n.5 (1st Cir. 1994) ("a reasonable choice-of-law provision in a contract generally should be respected").

Massachusetts law, "when the circumstances are appropriate, 'instruments deriving from a given transaction shall be read together'") (quoting *Gilmore v. Century Bank & Trust Co.*, 477 N.E.2d 1069, 1073 (Mass. App. Ct. 1985)); *Charlestown Five Cents Sav. Bank v. Zeff*, 176 N.E. 191, 192 (Mass. 1931) ("note, guaranty, and mortgage, having been executed contemporaneously as one transaction, are to be construed together"). In connection with the reverse mortgage transaction, the following eight (8) documents were prepared and executed as follows:

**(1) Residential Loan Application for Reverse Mortgages (the "Loan Application")**

The Loan Application contains boxes to be filled in by "Borrowers" and "Co-Borrowers." It identifies Patricia as the "Borrower" with her social security number, date of birth, and other identifying information. The boxes for "Co-Borrower" information are empty. The Loan Application also indicates that title to the Property is held in Patricia's name only. The application specifically notes that the loan will be secured by a mortgage on the Property. Patricia signed in the signature block designated "Borrower's Signature." The Debtor is listed as an "Alternative Contact Person." The Debtor did not sign the application as a "Co-Borrower."

**(2) Closed-End Fixed Rate Home Equity Conversion Loan Agreement (the "Loan Agreement")**

The Loan Agreement identifies Patricia as the "Borrower," specifies the terms of the parties' agreement in connection with the reverse mortgage, and specifically references the promissory note and the Mortgage signed in connection with the transaction. Only Patricia signed the Loan Agreement as the "Borrower."

**(3) Closed-End Fixed Rate Note (the "Note")**

The Note specifies that the "Borrower" is "each person signing at the end of this Note." Only Patricia signed the Note. The Note further indicates that it is secured by a mortgage of the same date. The Note contains the following provision:

6

    **6. Immediate Payment in Full**

        **(A)**    **Death or Sale**
Lender may require immediate payment in full of all outstanding principal and accrued interest, if:

        (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower . . . .

**(4) Settlement Statement**

In the Settlement Statement, Patricia is the only individual listed in part D, titled "Name & Address of Borrower." Patricia, but not the Debtor, signed the Settlement Statement.

**(5) Closed-End Fixed Rate Home Equity Conversion Mortgage (the "Mortgage")**

In the preamble of the Mortgage, where other relevant terms are defined, Patricia is specifically defined as the "Borrower"; it states: "[t]he mortgagor is PATRICIA B D'ALESSIO … ('Borrower')." The Mortgage further specifies that the "Borrower" was granting a mortgage on the Property to secure a promise to repay the Note, identified as the funds advanced under the terms of the Loan Agreement.[5] The signature page of the Mortgage then states: "BY SIGNING BELOW, Borrower accepts and agrees to the terms [of the Mortgage] . . . ." Immediately below, both Patricia and the Debtor signed above their pre-printed names followed by the notation "- Borrower."

Similar to the Note, the reverse mortgage contains the following provision:

    **9.**    **Grounds for Acceleration of Debt.**

        **(a)**    **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

        (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; . . . .

In the event the lender is entitled to immediate payment in full under Paragraph 9,

---

[5] Documents (2) and (3) above, signed only by Patricia.

7

Paragraph 20 of the Mortgage describes the lender's right to foreclose, specifically invoking the statutory power of sale (which allows for a non-judicial foreclosure process in Massachusetts).

**(6) Non-Borrowing Spouse/Vested Owner Interview Acknowledgment Form (the "Non-Borrower Acknowledgment")**

The Non-Borrower Acknowledgment, signed only by the Debtor, identifies the Debtor as the "Non-Borrowing Spouse/Vested Owner." The acknowledgment indicates that the Debtor had been contacted by telephone in order to review and understand certain information, including "risks associated" with the transaction. Included among the identified risks is the following:

> If the last surviving borrower no longer occupies the home as their primary residence, the loan may become due and payable. . . . When the last borrower passes away, a non-borrowing spouse/vested owner or heirs will be required to either pay off the full amount due on the loan (by selling the home, with cash or by obtaining new financing), or deed the home to Financial Freedom.

**(7) Borrower Interview Acknowledgment Form (the "Borrower Acknowledgment")**

The Borrower Acknowledgment identifies Patricia as the "Borrower" and is signed only by Patricia. It is nearly identical to the Non-Borrower Acknowledgment, indicating that Patricia was informed of certain risks involved with the transaction, including the above-quoted language describing the consequences of the death of the last surviving borrower.

**(8) Non-Borrower Spouse Ownership Interest Certification (the "Non-Borrower Certification")**

Both Patricia and the Debtor signed the Non-Borrower Certification. Patricia signed above her pre-printed name preceded by the notation "Borrower" and the Debtor signed above his pre-printed name preceded by the notation "Non-Borrower." It contains several statements, next to which both Patricia and the Debtor placed their initials. Among the statements, in bold and italicized language, is the following:

> We understand that should the Borrower predecease the non-borrowing spouse or if the Borrower fails to occupy the home as their primary residence and the non-

8

borrowing spouse resides in the home, the home may need to be sold to repay the reverse mortgage loan and the non-borrowing spouse may be required to move from the home unless another means of repayment is obtained.

The documents were all executed contemporaneously, concern a single transaction (the Loan Agreement outlines the terms governing the lending and the repayment of the loan, the Note evidences Patricia's promise to repay the loan, and the Mortgage provides security to ensure that repayment), and expressly refer to each other and integrate each other's terms. Accordingly, any potential ambiguity must be resolved by reference to the loan documents as a whole. *See Gilmore*, 20 Mass. App. Ct. at 56 (factors considered in treating separate agreements as one integrated contract are "simultaneity of execution, identity of subject matter and parties, cross referencing, and interdependency of provisions.").[6]

In each of the loan documents, Patricia alone is identified and defined as the "Borrower." The express language of the Mortgage itself defines only Patricia as the "Borrower." With the exception of the Mortgage, each of the other documents requiring a "Borrower" signature were signed solely by Patricia as "Borrower." Reading the documents together, any ambiguity created by the presence of the Debtor's signature at the end of the Mortgage readily dissipates. The Debtor had no interest in the Property to mortgage, and, with the exception of his signature on the Mortgage, was never represented to be a "Borrower" with regard to the transaction. In fact, the Debtor acknowledged – twice – his non-borrower status and the risks associated with the possibility of Patricia predeceasing him when he signed the Non-Borrower Acknowledgment and

---

[6] The Debtor cites to *Agin v. Mortgage Electronic Registration Systems, Inc. (In re Giroux)*, 2009 WL 1458173 (Bankr. D. Mass. May 21, 2009) for the proposition that the Mortgage should be interpreted without reference to the other simultaneously-executed loan documents. However, the *Giroux* case is inapposite. There, the court held that, under Massachusetts law, a mortgage containing a defective acknowledgment should not have been recorded and, consequently, its recording did not provide constructive notice of the mortgage vis-à-vis third parties, rendering it avoidable by a Chapter 7 trustee under § 544 of the Bankruptcy Code. Nothing in *Giroux* questioned or negated long-established Massachusetts law regarding the interpretation of multiple contracts forming a single transaction.

the Non-Borrower Certification.  Read together, and in context, this Court holds that an "objectively reasonable person" would conclude that only Patricia was a "Borrower" within the meaning of the loan documents. *See Nutter*, 86 N.E.3d at 1139.

The cases relied on by the Debtor, *Smith v. Reverse Mortgage Solutions, Inc.*, 200 So.3d 221 (Fla. Dist. Ct. App. 2016), and *Edwards v. Reverse Mortgage Solutions, Inc.*, 187 So.3d 895 (Fla. Dist. Ct. App. 2016), are easily distinguishable.  In both *Smith* and *Edwards*, the plaintiffs had signed reverse mortgages as borrowers, but were not designated as borrowers under the reverse mortgage notes.  *Smith*, 200 So.3d at 223; *Edwards*, 187 So.3d at 896.  In both cases, the Florida District Court of Appeal held that the spouses were "borrowers" under the plain terms of the mortgages.  Importantly, however, the *Smith* and *Edwards* courts looked only to the mortgages, and apparently did not have the notes, loan applications, loan agreements, and non-borrower spouse certifications before them to aid in their contract interpretation.  When later confronted with a more fulsome record, the same court that decided *Smith* and *Edwards* held that a spouse that signed only the reverse mortgage and a non-borrower acknowledgment was not, in fact, a borrower for the reverse mortgage.  *See Onewest Bank, FSB v. Palmero*, 2018 WL 1832326 (Fla. Dist. Ct. App. April 18, 2018).  Similarly, in cases with facts nearly identical to those before this Court (decided both before and after the *Smith* and *Edwards* decisions), several courts have concluded that the surviving spouse was not a borrower within the meaning of the loan documents.[7]

Finally, the Court is not persuaded by the reasoning in the *Smith* and *Edwards* cases that relied on federal law governing the circumstances in which HUD should insure reverse mortgages.  Looking to 12 U.S.C. § 1715z-20(j), the *Smith* and *Edwards* courts discerned a "clear intent to

---

[7] *See, e.g., Consolo v. Bank of America*, 2017 WL 1739171 (D. Mass. May 2, 2017); *Pikaart v. Financial Freedom*, 2017 WL 5624747 (W.D. Mich. Oct. 31, 2017), Report and Recommendation adopted, 2017 WL 5571120 (W.D. Mich. Nov. 11, 2017); *Washington-Jarmon v. Onewest Bank, FSB*, 513 S.W.3d 103 (Tex. App. 2016).

protect from foreclosure a reverse mortgagor's surviving spouse who is maintaining the encumbered property as his or her principal residence." *Smith*, 200 So.3d at 227; *see also Edwards*, 187 So.3d at 897. 12 U.S.C. § 1715-20(j) provides that

> [t]he Secretary [of HUD] may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. *For purposes of this subsection, the term 'homeowner' includes the spouse of a homeowner*.

12 U.S.C. §1715-20(j) (emphasis supplied).

However, as other courts have noted, § 1715z-20(j) does not govern the enforceability of contractual terms between the Debtor and CIT. While § 1715z-20(j) speaks to the circumstances under which HUD should properly insure a reverse mortgage; "nothing in the statute speaks to when a lender is allowed to foreclose." *Washington-Jarmon*, 513 S.W.3d at 112; *see also Estate of Jones v. Live Well Financial, Inc.*, 2017 WL 4176661, *3-4 (N.D. Ga. Sept. 20, 2017); *Aldi v. Wells Fargo Bank, N.A.*, 2015 WL 3650297, *7 (D. Conn. Feb. 17, 2015). Accordingly, the Court reads nothing in § 1715z-20(j) that would alter the enforceability or the terms of the loan documents or that would dissuade the Court from concluding that the Debtor is not a "Borrower" within the meaning of the Mortgage and the associated loan documents.

III. <u>CONCLUSION</u>

For all the foregoing reasons, the Court concludes that the Debtor is not a "Borrower" within the terms of the loan documents executed in connection with the reverse mortgage transaction. Accordingly, (1) the Plan Objection will be sustained, inasmuch as the Debtor's Chapter 13 plan fails to provide for adequate treatment of CIT's claim; (2) the Motion for Relief from Stay will be granted, inasmuch as CIT has established the requisite "cause" to proceed with

its nonbankruptcy rights under the loan documents; and (3) the Summary Judgment Motion will be granted, inasmuch as the Debtor is not a "Borrower" under the relevant loan documents. Separate orders and a judgment in conformity with this Memorandum of Decision shall issue forthwith.

DATED: June 11, 2018        By the Court,

/s/ Elizabeth D. Katz

Elizabeth D. Katz
United States Bankruptcy Judge